**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| IN RE:     CLARA AKALARIAN | Chapter 7 |
| Debtor, | BK No: 09-12681-anv |

**MEMORANDUM OF LAW OF *AMICI CURIAE*, NATIONAL CONSUMER LAW CENTER AND NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS, IN SUPPORT OF CLARA AKALARIAN'S OBJECTIONS TO RELIEF FROM STAY**

Now comes the National Consumer Law Center, Inc. ("NCLC") and the National Association of Consumer Bankruptcy Attorneys ("NACBA"), as interested parties, and hereby submit this Memorandum of Law in support of Clara Akalarian's ("Debtor") objections to motions for relief from the automatic stay and against OneWest Bank, FSB's ("OneWest") motions for stay relief.

**I.    Statement of Identity and Interest of *Amici Curiae* National Consumer Law Center, Inc. and National Association of Consumer Bankruptcy Attorneys**

The **National Consumer Law Center, Inc.** is a non-profit Massachusetts corporation specializing in low-income consumer issues with an emphasis on consumer credit. NCLC is a nationally recognized expert on consumer credit issues and has drawn on this expertise to provide information, legal research, policy analyses, and market insight to Congress and state legislatures, administrative agencies, and courts for almost

forty years. NCLC has a specific expertise in the areas of bankruptcy, foreclosures and predatory lending practices.

NCLC publishes an eighteen-volume Consumer Credit and Sales Legal Practice Series, including, inter alia, Consumer Bankruptcy Law and Practice (9th ed. 2009) and Foreclosures (2d ed. 2009 & Supp. 2009). NCLC frequently is asked to appear as an amicus curiae in consumer law cases before courts around the country and does so in appropriate circumstances.

The **National Association of Consumer Bankruptcy Attorneys** is a non-profit organization of more than 4,400 consumer bankruptcy attorneys nationwide. It is the only national association of attorneys organized for the specific purpose of protecting the rights of consumer bankruptcy debtors. Member attorneys and their law firms represent debtors in an estimated 800,000 bankruptcy cases filed each year.

NACBA has participated as amicus in various courts seeking to protect the rights of consumer bankruptcy debtors and advocates nationally on issues that cannot adequately be addressed by individual member attorneys. Among other things, NACBA works to educate the bankruptcy bar and the community at large on the uses and misuses of the consumer bankruptcy process.

NACBA members and NCLC have a vital interest in the resolution of the questions presented in this case. Across the country homeowners face motions for relief from MERS or entities claiming property interests derived from MERS, even though they have never heard of MERS and MERS has no interest in their loan. The securitization process and the existence of MERS have made it difficult for homeowners to know who actually owns their loan. As a result, debtors are limited in their ability to assert claims

against the owner of the loan and to defend stay relief motions. With respect to the issue of whether parties have standing to foreclose or to seek stay relief in bankruptcy, NACBA and NCLC have an interest in ensuring that local court rules and standing orders, such as this Court's Local Rule 4001-1, are enforced.

**II.    Summary of Argument**

The Debtor's schedules include two properties for which OneWest has filed stay relief motions: 365 Atlantic Avenue, Warwick, Rhode Island (the "Atlantic Property"), and 793 Namquid Drive, Warwick, Rhode Island (the "Namquid Property"). The Debtor has objected to OneWest's stay relief motions on the grounds that OneWest lacks standing to foreclose because of title defects.

With respect to these two properties, amici submit this memorandum of law in support of the Debtor and in opposition to OneWest's motions for stay relief. Stay relief is not warranted because OneWest has not proven that it is the real party in interest. It therefore lacks standing to foreclose on the properties.

Namely, OneWest has not shown (1) that the promissory notes secured by the mortgages were properly indorsed prior to negotiation of the notes, or (2) that the promissory notes secured by the mortgages were properly transferred, and (3) that the single individual who signed the mortgage assignments on behalf of two different companies was cloaked with the corporate authority to do so.

This court should not grant OneWest's stay relief motions unless and until OneWest can fully document its right to foreclose as the proper holder or assignee of the promissory notes. It is critical that debtors not be deprived of the fundamental protection

3

of bankruptcy – the automatic stay – without solid evidence that the creditor is in fact entitled to foreclose. This Court has required such proof through its adoption of Local Rule 4001-1.

### III. Argument

#### A. OneWest Lacks Standing to Foreclose On Both the Atlantic Property and the Namquid Property Because It has Not Proven Proper Negotiation of the Promissory Notes for Either Property

OneWest lacks standing to foreclose on either property because it has not proven its status as a note holder – it merely alleges that it is the holder – and is not therefore the real party in interest. More specifically, if the promissory notes signed by Ms. Akalarian are negotiable instruments, OneWest must be either 1) the holder in possession of the notes as order paper that have been properly negotiated with indorsements to it, or 2) the holder in possession of the notes indorsed in blank or as bearer paper. Alternatively, if the promissory notes signed by Ms. Akalarian are not negotiable instruments, OneWest must be an assignee through an unbroken chain of title from the original note owner. OneWest has failed to prove it is the note holder by any of these methods with respect to either note.

A motion for relief from stay is a contested matter under the Bankruptcy Code. *See* Fed. R. Bankr. P. 4001(a); 9014(c). Bankruptcy Rule 7017 applies in contested matters and incorporates Federal Rule of Civil Procedure 17(a)(1), which requires that "[a]n action must be prosecuted in the name of the real party in interest." Thus, OneWest has standing only if it is the real party in interest. OneWest has not shown that it is the real party in interest.

### 1. OneWest Has Not Shown That The Promissory Notes Were Properly Negotiated.

The Atlantic Property promissory note is intended as "order paper" because it provides for it to be made payable to the order of an identified person. R.I. GEN. LAWS § 6A-3-109(b). The Atlantic Property promissory note signed by Ms. Akalarian states in paragraph 1 that: "...I promise to pay ... to the order of the Lender. The Lender is RBMG, Inc." (Docket No. 28, Motion for Relief From Stay, Attachment #3, Exhibit A.). The note additionally provides space after Ms. Akalarian's signature for it to be indorsed, by reciting that it is "without recourse payable to the order of," and permitting the name of the assignee or new payee to be inserted. It also includes a signature line below that for the assignor, RBMG, Inc., which was the original lender.

Similarly, the Namquid Property promissory note is intended as order paper. It states in paragraph 1 that: "...I promise to pay ... to the order of the Lender. The Lender is Nation One Mortgage Company, Inc." (Docket No. 44, Motion for Relief From Stay, Attachment #3, Exhibit A.).

To become a holder of order paper, the assignor must indorse the instrument and give delivery of the instrument, so that the holder has possession of it. R.I. G. L. § 6A-3-201(b)("... if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."). If the instrument is not negotiated properly, then the party seeking to enforce the instrument is not in fact the holder of the instrument.

Here, OneWest alleges that it is the holder of the notes, but has not submitted any evidence that the original payees and note holders – RGMB, Inc. for the Atlantic Property

5

and Nation One Mortgage Company, Inc. for the Namquid Property – indorsed the notes for delivery to successive assignees. Unless, and until, OneWest can show that the notes were properly indorsed for negotiation, it cannot foreclose on the properties because it is not in fact the holder of the notes.

### 2. OneWest Has Not Shown That Promissory Notes Are Bearer Paper And That It Is In Possession Of Them.

Although the promissory notes in this case were initially order paper, they could have been converted to bearer paper. R.I.G.L. § 6A-3-109(c)("An instrument payable to an identified person may become payable to bearer if it is indorsed in blank pursuant to Section 6A-3-205(b)."). This would have required the original lenders to have indorsed the notes by signing them in blank or by inserting on them "pay to the order of bearer." R.I.G.L. § 6A-3-205(b)("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); R.I.G.L. § 6A-1-201(b)(5)("'Bearer' means a person in possession of a negotiable instrument, document of title, or certificated security that is payable to bearer or indorsed in blank."). If properly converted to bearer paper, this would permit payment to be made to whoever possesses them at the time they are presented for payment. R.I.G.L. § 6A-3-201(b)("If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.").

Once again, OneWest has failed to submit any evidence that it is in possession of notes in blank or marked as payable to bearer that were indorsed by the original note holders – RGMB and Nation One, or their successors. R.I.G.L. § 6A-3-204(a)("'Indorsement' means a signature, ..."). In fact, the notes submitted with the

6

motions for relief in this case are not signed by the original payees or indorsed by anyone else, and do not indicate that they are bearer paper.

### 3. MERS Has No Interest In The Promissory Notes And Could Not Possibly Have Transferred Ownership Of The Notes To OneWest.

If the promissory notes in this case are not negotiable instruments or were not properly indorsed, OneWest arguably could still have standing to seek stay relief if it could show that it is the owner of the notes by virtue of a valid transfer. With respect to the Namquid Property, OneWest alleges that MERS, solely as nominee for Nation One Mortgage Company, "assigned said note and mortgage" to OneWest. (Docket No. 44, Motion for Relief From Stay). The Assignment of Mortgage from MERS to OneWest purports to transfer the mortgage to MERS from Ms. Akalarian "together with the mortgage note secured thereby." *Id*. at Exhibit C. As for the Atlantic Property, OneWest simply claims to be the "holder" of the note, although OneWest attaches to its motion a similar assignment from IndyMac Federal Bank FSB to OneWest.[1] (Docket No. 28, Motion for Relief From Stay). As shown below, MERS has no authority to transfer interests in the subject notes.

MERS is not a lender and did not provide any financing to Ms. Akalarian. MERS is not even mentioned in either of the promissory notes signed by Ms. Akalarian. The Atlantic Property note identifies RBMG, Inc. as the lender and the Namquid Property note lists Nation One Mortgage Company, Inc. as the lender. At no point did

---

[1] The amicus brief filed by MERS in this case contends that there had been a prior assignment of the Atlantic Property mortgage from MERS to IndyMac Federal Bank FSB.

7

MERS become entitled to receive payments from the Debtor. MERS therefore has no property interest in the subject notes.

MERS sole interest is to serve as the mortgagee in a limited capacity, that is solely as nominee for the lender. Both mortgages in this case state that "[b]orrower understands and agrees that MERS holds only legal title to the interests granted by Borrower **in this Security Agreement**,..." (Docket No. 44, Motion for Relief From Stay, Exhibit C; Docket No. 28, Motion for Relief From Stay, Exhibit C)(emphasis added). MERS has no equitable interest in the mortgages, only bare legal title. Its only function is to serve as a placeholder in the land records for whomever owns the loan at any given moment.

Similarly, the MERS membership rules clearly state that members are never permitted to claim MERS is a "note-owner" as part of foreclosure proceedings. Rules of Membership, Rule 8, Section 2(a)(i)("The Member shall not plead MERS as the note-owner in any foreclosure document; including but not limited to, the foreclosure complaint."); 2(c)("If the Member pleads MERS as the note-owner or as a co-plaintiff or commences a foreclosure in the name of MERS when the note is lost or cannot be located, it shall be considered a violation of the MERS Membership Rules and MERS may dismiss such foreclosure action."). And for good reason, because, MERS's Terms and Conditions specify that "MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage

8

loans, or to any mortgaged properties securing such mortgage loans." MERS Terms and Condition at ¶ 2.[2]

MERS' complete lack of interest in the proceeds of the loans is corroborated by the decisions of other courts that have examined the function of MERS. For instance, the United States Court of Appeals for the Seventh Circuit has described MERS' complete lack of substantive involvement in the lending transaction:

> MERS is not the lender. It is a membership organization that records, trades, and forecloses loans on behalf of many lenders, acting for their accounts rather than its own. . . . It is a nominee only, holding title to the mortgage but not the note. Each lender appears to be entitled not only to payment as the note's equitable (and legal) owner but also to control any litigation and settlement.

*Mortgage Elec. Registration Sys., Inc. v. Estrella*, 390 F.3d 522, 524-25 (7th Cir. 2004).

Similarly, the Nebraska Supreme Court has "conclude[d] that MERS does not acquire mortgage loans" because "simply stated, MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money." *Mortgage Elec. Registration Sys., Inc. v. Neb. Dep't of Banking & Fin.*, 704 N.W.2d 784, 788 (Neb. 2005). This conclusion relied upon MERS' arguments to that court that:

> it only holds legal title to members' mortgages in a nominee capacity and is *contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members*. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to the payments made on the notes.
>
> *Id*. at 787 (emphasis added).

---

[2] The MERS Rules of Membership and Terms and Condition are available at: http://www.mersinc.org/MersProducts/publications.aspx?mpid=1.

It goes without saying that one who does not have an ownership interest in property has nothing to transfer. By its own public admissions, and as reflected in the documents in this case, MERS has no legal or equitable interests in the promissory notes signed by Ms. Akalarian. Thus, the Assignment of Mortgage documents executed by MERS did not convey any interest in the subject notes to OneWest (or its predecessors in interest). OneWest therefore cannot claim to be the holder of enforceable notes against Ms. Akalarian based on the Assignment of Mortgage documents.

### 4. The Burden of Proof Rests With OneWest To Prove That It is The Real Party in Interest.

OneWest bears the burden of proving it is a real party in interest. *In re Wilhelm*, 407 B.R. 392, 400 (Bankr. D. Idaho 2009) (citing *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass 2008) ("To have standing to seek relief from the automatic stay, [movant] was required to establish that it is a party in interest"). The real party in interest in relief from stay proceedings must be an entity entitled to enforce the obligation sought to be enforced. *In re Jacobson*, 402 B.R. 359 (Bankr.W.D.Wash. 2009); *In re Kang Jin Hwang*, 396 B.R. 757 (Bankr.C.D.Cal. 2008). If OneWest wishes to exercise the rights of a proper holder of the notes, including foreclosure, this Court should require it to adequately document its holder status.

In fact, this Court has required such proof in all cases in which stay relief is sought based on its adoption of Local Rule 4001-1. This local rule requires that the "moving party shall include, as an attachment to either the motion or memorandum, a completed copy of R.I. Bank. Form R, Relief from Stay Worksheet Real Estate — , as

10

well as the required attachments to the motion as specified on Form R." The instructions on Form R state that the following items must be submitted as Required Attachments:

> (1) Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit _____.)
>
> (2) Copies of documents establishing proof of standing to bring this Motion. (Exhibit _____.)

OneWest has apparently misconstrued this local rule as requiring only proof of mortgage assignments. To establish proof of standing and to otherwise comply with Local Rule 4001-1, OneWest should have attached copies of the promissory notes showing that they were properly indorsed, including any indorsements affixed to the notes (allonges). Alternatively, OneWest should have produced copies of assignments transferring interests in the notes through a chain of title from the original lenders. Additionally, a declaration from an employee or officer of OneWest should have been attached to the motions certifying that OneWest is in possession of the promissory notes.

### B. The *Bucci* Case Is Not Relevant

OneWest and MERS argue that this Court's decision is controlled by the Rhode Island Superior Court decision in *Bucci v. Lehman Bros. Bank*, 2009 R.I. Super. LEXIS 110 (R.I. Super. Ct. August 25, 2009) and that "it is absolutely clear that the Debtor in this matter is raising the exact same issues already determined in the *Bucci* decision." Docket No. 70, Page 7. This assertion is incorrect and misleading to the Court. The *Bucci* case has no bearing whatsoever on this case and the Debtor is raising very different issues here.

11

The *Bucci* case held only that, on the facts, MERS was a valid mortgagee and had the ability to exercise the Rhode Island statutory power of sale contained in a mortgage instrument. That holding has absolutely nothing to do with this case.

This case is about whether OneWest is a legitimate holder of the promissory notes and actual mortgagee of record, such that it is entitled to foreclose on the Debtor's properties. It is not about whether MERS has standing to foreclose in its own name. Thus, the statements that "if MERS is a valid mortgagee, it must follow that it has the power to assign its mortgage," Docket No. 64, Page 2., or that MERS may "assign the mortgage to another entity along with all the rights of a mortgagee" Docket No. 70, Page 7., are non sequiturs and irrelevant to the resolution of this case. As mentioned, there is a question about MERS ability to transfer interests in the promissory notes in this case, but that issue was not addressed in the *Bucci* case as the Court focused on MERS' role as mortgagee as the nominee for the beneficial owner of the note. *Bucci v. Lehman Bros. Bank*, supra, 2009 R.I. Super. LEXIS 110, at *11-12. It was also clear in *Bucci*, unlike this case, that the note was bearer paper and that the beneficial owner was in possession of the note. *Id*.

### C. The Record is Silent as to the Authority of Ms. Johnson-Sesk to Assign Mortgages on Behalf of Both IndyMac and MERS and the Differing Signatures on the Assignments are Problematic

A close examination of the mortgage assignments for the Atlantic Property and the Namquid Property reveals that both were signed by a certain Ms. Erica A. Johnson-Sesk. With respect to the Atlantic Property, Ms. Johnson-Sesk signed as a Vice-President of IndyMac; for the Namquid Property, she signed as a Vice-President of MERS. In

12

addition, the signatures on the assignments appear quite different. *See* Docket Nos. 28 and 44, Attachment #3, Exhibit C. Taken together, this raises the question of whether either assignment is genuine and executed with proper authority.

First, there is no evidence in the record establishing that Ms. Johnson-Sesk had the authority to assign mortgages on behalf of both IndyMac and MERS. The assignments in both cases represent that Ms. Johnson-Sesk serves as a corporate officer, a Vice President, for both entities. Ms. Johnson-Sesk also signed the Relief from Stay Worksheet on the Atlantic St. property as Vice-President of OneWest.

In a recent New York foreclosure case, Ms. Johnson-Sesk claimed to be a Vice-President for yet another entity, signing affidavits in the case as Vice President of both Deutsche Bank National Trust Company and MERS. *Deutsche Bank Nat. Trust Co. v. Maraj*, 18 Misc.3d 1123(A), 856 N.Y.S.2d 497, 2008 N.Y. Slip Op. 50176(U) (N.Y.Sup. Jan 31, 2008). The affidavits and assignment of mortgage in *Maraj* indicated that Indymac, MERS, and Deutsche Bank all shared the same business address. The Court in *Maraj* denied the plaintiff's motion for a default foreclosure judgment because of questions about Ms. Johnson-Sesk's authority to serve in multiple roles and ordered her to submit an affidavit describing her employment history.

Similar questions exist in this case. OneWest bears the burden of establishing Ms. Johnson-Sesk's authority to act on behalf of IndyMac, One-West and MERS and how she came to serve as Vice-President for all three entities. Corporate resolutions from all three entities should have been submitted establishing her status as a valid corporate officer. It is worth noting that if Ms. Johnson-Sesk were actually serving as an agent for

13

these entities, rather than a corporate officer, then she would have been required to attach a power of attorney to the mortgage assignments.

The situation would be different if the question concerned either of the assignments individually. In that case, the assignment would not raise any red flags. Where, however, the Court is presented with these two mortgage assignments (and a separate worksheet) simultaneously as part of a whole record of evidence, showing that they have been executed by one individual apparently wearing many hats (or pens) for three separate entities, the Court may properly require OneWest to submit evidence establishing her authority to assign the mortgages.

Finally, Ms. Johnson-Sesk's signature is obviously different on each assignment: the signature on the Atlantic Property assignment is long and legible, while the signature on the Namquid Property assignment (and Atlantic Property stay worksheet) is short and illegible. Again, either signature standing on its own would not be suspicious. In this case, given the totality of the circumstances and record taken as a whole, it is only fair to the Debtor that the Court be absolutely convinced that Ms. Johnson-Sesk actually signed both assignments.[3]

**IV.    Conclusion**

It is of course possible that OneWest is the proper holder of the promissory notes and legitimate assignee of the mortgages. However, the current record does not support such a determination. Constitutional standing in federal bankruptcy court requires that

---

[3] It is of particular interest that both assignments were executed within thirteen days of each other, on April 29, 2009 and May 12, 2009. Thus, it is unlikely that the significant difference in the signatures was the result of Ms. Johnson-Sesk having changed her signature over time.

14

OneWest establish a complete and valid chain of transfer for both the notes and the mortgages, and that it held the notes and was the mortgagee of record at the time it sought relief from the automatic stay. If OneWest cannot establish this trail, it cannot be permitted to foreclose on the properties.

This Court should refuse to lift the automatic stay – the fundamental, bedrock protection for debtors in bankruptcy – unless OneWest can prove that it is actually entitled to foreclose on the Atlantic and Namquid properties.

Respectfully submitted,

National Consumer Law Center
By its attorney,


  /s/  John Rao
National Consumer Law Center, Inc.
7 Winthrop Square, 4th Floor
Boston, MA 02110
(617) 542-8010



National Assoc. of Consumer Bankruptcy Attorneys
By its attorney State Chair,



 /s/ Christopher M. Lefebvre
Christopher M. Lefebvre (#4019)
Family and Consumer Law Center
Two Dexter Street, Box 479
Pawtucket, R.I. 02862
 (401)728-6060


DATE: January 11, 2010

## CERTIFICATE OF SERVICE

      I hereby certify that on the 11th day of January, 2010, I electronically filed this Memorandum with the Clerk of the Bankruptcy Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

- Keven A. McKenna, Esquire
- Andrew S. Richardson, Esquire
- Gary L. Donahue, Esquire, Office of the U.S. Trustee
- Jeffrey J. Hardiman, Esquire
- Jeffrey H. Gladstone, Esquire
- Elizabeth A. Lonardo, Esquire
- Raymond C. Pelote, Esquire
- Christopher J. DeCosta, Esquire

and I hereby certify that a copy of the Memorandum was served by regular, first class mail, to the following interested parties as set forth below:

    Ms. Clara Akalarian
    793 Namquid Drive
    Warwick, RI 02888

                                                   /s/ Christopher M. Lefebvre